3 23 0 4 1 3. Jen Wang Appellant versus Brian Real Soto Appellee. Thank you. Good afternoon. Yeah. Mr J. War. Are you ready to begin? Yes, ma'am. You may start. Thank you. May it please the court. My name is john J. War and I represent the plaintiff appellant Jan Wang. At the outset, I'd like to say that I would like to be able to make use of a few minutes of this oral argument to address two issues. First, to provide an executive summary of what I consider to be the most critical factors that distinguish this case from all the other plethora of 103 B cases. And second, to take a moment to contrast and distinguish this case from the most recent case that this district considered involving 103 B motions, namely the Gutierrez versus quail run case, which I would note that judges Albrecht and  and um Brennan, excuse me, I'm trying to find your names on the screen. They in any event, both of you um were on the panel, which in fact ruled in favor of the decision of judge cap is dismissing a 103 B motion. The Gutierrez case was not cited in any of the briefs and needs to be explained why it is distinguishable from the facts here and also why at least I would argue the implicit reasoning of the Gutierrez case. And obviously you're here and you know what you reason. But from my inference, what was written actually supports a contrasting holding in this case has distinguished from Gutierrez. So if I may, key points. One, this case uniquely, relatively uniquely from other cases had a whole service agreement in place. I won't go into the specifics of that, but I would note that both the McRoberts decision and I would suggest the Gutierrez decision acknowledge the potential effectiveness of a whole service agreement. But in Gutierrez, there was no, there were defects in that whole service agreement, which I'll explain shortly a little bit later to this case uniquely from all 103 B cases that I have read and I have read a lot is a situation where the location of defendant was non-existent prior to the filing of the complaint and remained non-existent and non-discoverable until by a miraculous accident the individual defendant appeared a year and a half later. No other case to my knowledge involved a situation where a process server attempted to serve the defendant before the complaint was filed and show that the defendant had moved, didn't exist, no forwarding address, and didn't know and was otherwise unlocatable. Three, in this case, unlike other cases, Judge Douglas, to whom case management had originally been, the case management of this case had originally been assigned, governed the issue of service, governed the issue or considered the issue of service, considered all the events that transpired from the initial filing of the complaint, and in his order of allowing a section 203 special service order specifically held, specifically found that the plaintiff had engaged in due diligence and in fact had engaged and took reasonable steps to find the defendant. Now I'm not, I do not contend that Judge Gibson is bound by the ruling of Judge Douglas. His ruling should have at least mentioned Judge Douglas's prior finding and he didn't. And Judge Douglas was more familiar with what had transpired in the course of the case than Judge Gibson was a year and a half later. Four, this case, unlike many other cases, had continuing efforts by the plaintiff to try and find the defendant. We submitted interrogatories and interrogatory, we cited the case, we're waiting for an interrogatory answer. It justifies and excuses delay. We followed up with making telephone calls to the phone and disconnected telephone calls. We cited a case saying that that explains delay. We went to the defendant's last known address, knocked down doors, looked at cars in person, couldn't find anyone. We engaged in internet searches, white page searches, general commercial database searches with the name and found nothing. Five, special cases. In Gutierrez, Judge Kappas did note that the health and special issues of the plaintiff's counsel might explain, not determinative, but might explain or excuse elements of the case. In the course of the briefing, although while we had mentioned this point, we didn't put it under the special issue category because I don't particularly like utilizing my own circumstances to explain things. However, in this case, I will reiterate at this present time that during, as a factor during this, the various time frames, I had COVID twice, serious COVID once, my father-in-law died of COVID, my mother-in-law died of COVID, my cousins and close relatives all had serious cases of COVID. I engaged in both colon and ultimately serious heart issues and I had an adopted daughter who was mentally disabled. We encountered very serious criminal matters by virtue of her attempting to rebel and act recklessly and associate with disreputable people, which was ultimately favorably resolved. But nevertheless, during this time frame, all those factors weighed heavily particularly on me as a solo practitioner. The other special factor that's involved in here in this matter is actually the issue of waiver. And Ms. Wine had filed numerous motions, one motion to quash an affidavit of service, then a motion to quash the motion for default, multiple briefs that were written, not one time in any of those instances that she raised the issue that there was delay, unreasonable delay in service. That was not done until a year and a half, a year later, when the actual service had occurred on her defendant Soto. Next point, last or fifth point, no one ever knew where Mr. Soto was. No one could find Mr. Soto. His insurer couldn't find Mr. Soto. The clerk of the DuPage County Court couldn't find Mr. Soto. I couldn't find Mr. Soto. Ms. Wine told Judge Gibson she didn't know where Mr. Soto was. No one could find Mr. Soto, mainly because no phone number, no social security, and various other factors that we list. And the last point, can I ask you a question, Mr. Jauer? When did Wang's insurer serve Soto in their subrogation action? Oh, when he was, well he never, they never served the defendant. I believe that that happened four days, November, four days the actual service was, the report of the service was filed with the court four days before we filed the complaint. And we had no knowledge that that had been done. I only found that out a month later when I went through the court file trying to find out what's going on in all these cases. But that was done four days before the complaint was filed, our complaint was filed. And about two years, about two years after the accident, of course. That is correct. Yes. And I just want to confirm one other thing. The, as best anyone can determine, Mr. Soto moved in December of 2020 at some point, correct? No, the evidence suggests he moved in November of 2020. I will, the reason for that is, A, fireman's special process, of special service went to the site to try and serve service. Not only found the building empty, contact and spoke to people that were there and spoke to a live person to whom he then handed their complaint to and was informed that Soto doesn't live there. He moved while you're trying to serve him here. And the apartment was empty. It was open, it was undergoing renovation. Second factor is when we hired our own private investigator, the second time around, he went, he sent his agents to investigate the site, spoke to the tenants who lived in the building, who lived in the building at the time that Soto lived in the building, knew Soto, said that Soto moved out in November of 2020. They had no idea where he was. They spoke to the landlord confirming that Soto moved out at least in November, if not October. It's some people may have said October, some people said November in any event before the complaint was filed. And no one at the address, landlord, tenants who knew them, had any idea where he was, any idea how to contact him. So for all intents and purposes, factually, he was gone before we filed our complaint. Now, admittedly, I did not find out all of that information until January, roughly January of 20. I apologize, I miss up the years, January 2021. Because in that interim timeframe, I was trying to just get information about the case. And in the process of getting information about the case, that's when I found out about it in January. So all this was done before the complaint was filed. His moving was done before the complaint was filed. And the only information we had on him, which was what's contained in the police report, which listed his address, and which we cited the case saying that you can one can rely on that. And all the other information that was listed in that police report was false. What was false. Moving on to the Gutierrez case, I want to just point out a couple of points of differentiation and I'll be open to either differentiation. First, the case came also from DuPage Circuit Court. And this case was appealed from Judge Kappas. What Judge Kappas did when he ruled on the 103 motion is in stark contrast to respectfully what Judge Gibson did. Judge Kappas not only listed the various factors, but explained in detail, factor after factor, how the various factual matters weighed on one way as opposed to another. Judge Gibson respectfully listed the factors, but didn't discuss any of the factors that on which we appeal. And that's one reason why, in fact, we did appeal. Two, in Gutierrez, the defendant was never served. That's a significant factor in taking consideration as to 103B was in effect. After years of briefing, years of appeal, the defendant was never served. Three, there was respectfully somewhat of a pattern of neglect in Gutierrez. The case had been dismissed twice. There were numerous instances of failure to appear. Now, arguably, the counsel there, like me, had medical issues and Judge Kappas did suggest that those were mitigating factors. But in light of all the other factors, that was a minimal mitigating factor. What is of interest is that, so in any event, there was an overall pattern of neglect. Three, in Gutierrez, there was no service, no service hold that was in place. Now, what do you, what, I won't say the Gutierrez court because you, you justices were there. From reading what I read and inferred from the case, it sounded as if, had there been an old agreement in place, that might have been a mitigating factor following the McRoberts case that we cited, where there was an effective one. What I thought that the court was getting at in Gutierrez is that all that happened in that case was when the accident occurred, the attorney sent five days after the accident, not after a complaint was filed, just a routine letter to insurance company saying, hey, I got a complaint. I mean, I got a complaint. There was never any submission of an actual formal action that was sent to the insurer. And what's important is to be able to inform the insurer for purposes of knowledge and everything else, that in fact, there is a legal action that is pending. That's not the case here. When the, first of all, we contacted the insurer. I was brought in 10 days before the statute of limitations expired. And that was my happenstance at a social gathering. And I took pity on my friend and said, we got to do something to prevent you because you're being railroaded. So I just attempted to file whatever I could. Two days before we filed the complaint, I first notified the insurance company, Soto's insurer, that I'm representing and trying to engage in negotiations. We filed a complaint. Five days after we filed the complaint, we sent the complaint to the insurer. In that transmission, we specifically said we're going to hold off on service so that we can negotiate potential settlement terms. Mr. J. War, excuse me, your time is up. Uh, it's 15 minutes already. Oh, my Lord. All right. I can see the red light. I, we, well, time. You will have five minutes after Ms. Wine's present. I apologize to the court. Time flies. Uh, thank you, ma'am. Thank you. Are there any questions for Mr. J. War? Not at this time for me. Okay. Um, Ms. Wine, good afternoon. You may begin. Thank you. Good afternoon. If it please the court, this particular case is really a, it is a poster child for why we have 103 B and why the Supreme Court instituted that rule. Before I get into the substance, I would just point out that the Gutierrez case, although I am generally familiar with that case, um, it was not cited, I don't believe by any party. And I think it is unfair for the appellant to raise a case that he didn't cite and argue a case. Again, I am generally familiar with the holding in that case. And as I read it, it's a case very familiar, um, and favorable to the defense, but it was not argued by the parties. And so I do have that objection to that specific case. The other objection I would have is to counsel's assertion of his personal issues that are not part of the record. There were some vague references in the record, but the specifics were not there. And again, I don't think it was proper to raise it the first time on appeal getting to the substance here. We have a lawsuit that was filed right before the statute of limitations ran. That is acceptable. We have deadlines. He beat the deadline that that's acceptable. But 103 B says you cannot file a lawsuit just to go made the statute and then sit back and wait to prosecute your case until you are ready to do that because that artificially extends the statute of limitations when a defendant doesn't have the opportunity, um, for defense of the lawsuit immediately upon the statute of limitations. Here, plaintiff's counsel is acknowledged both in the trial court and his briefs in his filings in the, uh, trial court and his arguments that in fact he made decisions. He made strategic decisions to not serve the defendant. Um, he wasn't ready. He didn't have his, um, I think in one of the letters that's attached, he didn't have his specials or his medicals together. He had no demand. He made no, um, uh, dispute about that and did not get any agreement from anyone to waive service or to withhold service. Um, merely announcing, Hey, I filed the lawsuit, which all that does is it's a with the contractual obligation to trigger the insurance coverage. That's not service on a defendant. That's not notice to a defendant. That is, um, a prophylactic measure by the plaintiff in the underlying case to make sure that he's going to have insurance coverage if he prevails. Ultimately, that's all that is. There was never any agreement. There's nothing that he can point to that says the insurance company did anything other than that. They are statutorily required to do their regulated industry. If they're put on notice, they can't ignore that. They have to note in their file. They've been put on notice of a lawsuit that is not service. Supreme Court requires service. The court cannot have any jurisdiction without service. In this particular case, plaintiff's counsel was not ready to proceed. He has admitted both again in arguments in the trial court and in his briefs before this court and in arguments, written arguments in the trial court that he wanted to focus on the co defendant. There was a co defendant here. He got service on the co defendant. He, um, engaged in some discovery. Um, I was not party to that. We don't know the record. It does indicate discovery was issued and ultimately a settlement and ultimately potentially a good faith finding, which, as indicated in the brief, I'm not sure that would even actually have been effective since the good faith finding is against a co defendant. Uh, my client who was not a served and was not before the court at that time. So I don't know how that could have been binding on him. Nonetheless, that order was entered after plaintiff's counsel dealt with Mr Garecki settled the case with Mr Garecki. He then began to look at service. We have a case here where we have nine months of nothing in terms of service on the defendant. Rail soda. Nothing. Um, the record shows no summons issued. No alias issued. Um, there seems to be an after the factory construction of what may have been transpiring during that time. But what didn't transpire and what Judge Gibson found was that there was a summons issue. The very basic issuance of a summons did not occur on this defendant for a period of nine months. Counsel said, well, it would have been futile. Well, that that's not really an excuse to not issue the summons. You issue the summons. In this case, he did issue the summons. But when he did it, he did it to the exact address where he subsequently claims. Well, it was futile, and that's why I didn't do it. Well, that that makes no sense. Secondly, if you if you take the timeline back for the plaintiff back to when he filed the lawsuit, and if he knew at the time he files a lawsuit that there's no point in or it's going to be futile, then your immediate action is going to court and seek redress. The Legislature has given parties redress under a 203.1 for special service. Provide the court the trial court with whatever evidence you have is going to be futile. I shouldn't have to go to this address. I shouldn't have to look for this person. I shouldn't have to go there. I want service in another manner. He ultimately does that, but that's after he settles with, um, uh, Garecki, the co defendant. And I think that's something something like another, uh, eight or 12 months after that. And when he does get this rule from the trial judge that he can pursue special service by order of court, he doesn't do it. He gets that order in March of the year and doesn't even issue a summons again until May, with their return date in June. And that is the last summons that you have. It's actually an alias. I'm sorry, but that's the last that you have until the ultimate alias, which is served on the defendant. Um, a year and four months after that, you have the nine or eight or nine months of the arguing on the motion to quash, which plaintiff's counsel said should be attributed to the defense. But it really shouldn't. Um, the first thing I would say is, even if it is, it doesn't get you past the first nine month delay, and it doesn't get you past the other delays. But it shouldn't be counted against the defendant anyway, because these matters were brought to plaintiff's counsel's attention. And for whatever reason, which is still absolutely inexplicable, plaintiff's counsel said, both in the trial court, in his arguments, in his writings and in the brief, that he believed that he did not have to have a summons, that for some reason he thought 203.1 was an alternative to service, not an alternative means of effectuating service, but that because he got an order for 203.1, he didn't have to serve the defendant. He even argued in his briefs that, well, clearly the defendant couldn't be served. That's the purpose. Of course, there's no summons. That just turns everything on its head. The only way other than an agreement to get the jurisdiction of a court over defendant is service of process. The process in Illinois is a summons or an alias. There is no other way that this court could have, I'm sorry, that the trial court could have jurisdiction over defendant. It is still inexplicable how a party could think that there could be service without this summons. The attempts of service later were ineffectual. Counsel's argument that somehow we waived a 103B, there's no requirement that a 103B be presented to a court before the court even has jurisdiction over a defendant. So there's no waiver of something that you would have to waive the jurisdiction in order to raise the motion. There was no jurisdiction over the court over this defendant for 29 months after the lawsuit was filed. And counsel was again put on notice of that even by Judge Douglas. Although he says Judge Douglas gave him the 203.1 special order of court for service. That's true. But Judge Douglas is also the one that ultimately, about five months later in October, tells Mr. Jawar, sir, you need to have a summons. This order did not allow you to just not serve this defendant. And my motion to quash was in fact denied because the court agreed with me that there was no summons to quash. There was no return in the file. Throughout all of this time, there's not a return of a summons in the file until we get to the ultimate in the following year in April. Even after Judge Douglas explains this to plaintiff's counsel and tells him and there's an order that says, although the motion to quash was denied, it was denied because it was not right because there was nothing to quash in the record and that there would be no motion to default heard and there would be no judgment entered until there was something in the record. We never got there until the following April, but plaintiff's counsel still did another motion to default and then apparently attempted to use a secretary of state service, allegedly in December, going back to an alias that had been issued in May. It was just chaos. This entire situation has been nothing but chaos and nothing that should have occurred. Whether the defendant could have easily been found or immediately found, we don't really know because summons wasn't issued. The summons should have been issued then, the day that complaint was filed, maybe the next day if you're filing late in the day, but you file the complaint, you issue the summons, you find out what happens, you immediately get on it. In this case, the complaint itself was on the day the statute ran, or I'm sorry, it was two or three days before, I apologize. At that point, your diligence is really necessary because a lack of diligence after the statute runs is a prejudice dismissal, not a without prejudice. You're on notice, get on the ball, get this person served, do what you need to be diligently working on this. Instead, we have absolute silence, no summons for nine months, which is near fatal in and of itself. That is near fatal. But if the case was on, you know, its last rights, at that point, that would have been the time to really jump into it, do extremely diligent, and then try and go back and say, okay, the nine months isn't that bad, because we diligently did it. That didn't happen here. It was more argument, more delay, more failure to issue a summons. And it just continued on until this plaintiff ends up artificially extending a statute of limitations for really double what the statute of limitations is. I think my calculation, which I could be wrong on the math, but I calculated about 59 months, two years is 24, four years is 48. So he had longer than, more than doubled the statute of limitations by this delay, and delay, and delay in service. The case law is fairly clear on this. We made our prima facie fining, it then shifted to the plaintiff. And I would really like to talk very briefly about the standard. This plaintiff or appellant seems to argue to this court that this court should substitute its judgment for that of the trial court. That would be a de novo review. That is not the standard here. This is an abuse of discretion standard. The trial court is the one that makes the decision. In reverse, the trial court, it would have to determine that the court's decision was fanciful or irrelevant, irresponsible, arbitrary, ridiculous. If it was reasonable, then the judgment of the trial court stands. It is not a de novo review, it is an abuse of discretion review. In this case, the plaintiff's arguing that the delay is significant. He seems to be saying that it is someone else's fault. But in truth, the only party that is responsible for service is the plaintiff. The plaintiff has an obligation to get service. Defendant has no obligation to appear in a case when there is no service. His arguments really just led to this path of delay in this case. The case is cited by plaintiff's counsel. I think I distinguished appropriately in the briefs. Here, we still do not have any explanation for a nine-month delay in even issuing a summons and a 29-month delay in the service. Motions could have been brought, attempts could have been made, but apparently a wrongheaded belief that he did not have to serve this defendant underlies the problem here. But 103B is to prevent this kind of delay where a defendant is really notified and on notice of a lawsuit 48 months, 59 months after a cause of action accrues and not 24, 25, 26 months after a cause of action accrues. I am happy to take any questions. I do not want to belabor it. I made the arguments in the brief that I thought were appropriate, and I would be happy to take any questions. Thank you. Are there any questions for Ms. Wine? I have none. No, thank you. Thank you, Ms. Wine. Mr. Jawar, any rebuttal? Yes, but not sure if I can fit it all in five minutes. Let me go back quickly to Gutierrez. Two more points that I have failed to mention. Number one is, in Gutierrez, the defendant was easily locatable. All the plaintiff's counsel had to do was go to Secretary of State's database, the registered agent was listed there, he could have found who to serve. The other point was that there was no knowledge of the lawsuit on the part of the defendant where here there was, because when farmers, Wang's insurance counsel, filed suit and gave the suit to someone who was sitting outside Mr. Soto's apartment, fireman, I mean, Ms. Wine's carrier, American, settled the case. They assumed the liability, and they paid the money. They didn't pay the money because somebody just asked for it. They knew he was liable, and they paid it. Whether it was reasonable, in my part, to thinking, well, if they settled with firemen's, they most likely will try and settle with me because it's the same case, and it's only a few dollars more than what they previously paid to firemen's on behalf of Ms. Wang. And the last point on Gutierrez is, in that case... Counsel, why are you arguing a case that wasn't cited in either brief, and you're arguing it as the counterpoint to this case? Because both of the judges sitting on this panel considered that case, nobody knew about until I prepared for this oral argument, up it popped, and I assumed that this court will probably be thinking about that case and deciding this case. But let me move on to a couple other points that Ms. Wine raised. During the entire time frame, from the time that the complaint was filed to when the first summons was issued, there was a monthly negotiations between myself and counsel for the insurer. In June of 2020, the insurance counsel indicated, well, either make a final... Counsel, is this in the record? Yes, ma'am. Where is it in the record? It's on page... Well, first, I can't give you where it was cited in the brief, but I think it was the... C-376 on June 9th, the insurance counsel asked me for making a specific demand, which indicates that negotiations were continuing. And on 378, on July the 28th, I responded, indicated what the medical damages were, talked about the possibility of settling. Now, after... I believe there was a phone call after July the 28th, 2020. My recollection was, as a result of that, there was a clear impasse with the insurance counsel. As a result, five days, six days after my communication on July the 29th, we started the process of trying to serve and we had alias... Had the summons issue. So from the timeframe from when the complaint was filed through to July of 2020, there was a continuing negotiations, similar, almost exactly similar to what happened in McRoberts' case, we cited. And when it came an impasse, we then proceeded to try and attempt to serve the individual. Now, why wasn't something done further, sooner? How do... You have to list an address for a person to be served. We cited another case, I think the Carruthers case, where the appellate court criticized plaintiff's counsel for papering the file by sending out alias summons after alias summons to addresses that the plaintiff's counsel knew wasn't any good. I was aware of that case. I was in a conundrum. Do I just send out summonses to someplace where the man doesn't exist? So we went forward with 203B and we did so five days after negotiations ended with the insurance counsel. The issue of, do you need service under 203B, respectively, this was briefed. And respectively speaking, the only reason you go through 203 is because you cannot effectuate personal service. It's an alternative service. You can get service by posting, you can get service by sending to the secretary of state. The secretary of state accepted the service. I am not responsible for the fact that it took the secretary of state during COVID four months before they sent me a letter back saying, we accept service. And they accept service, why? Because a summons was sent to the secretary of state. That's out of my control. I can't get them to work any faster. The issue of- Mr. Jaywar, I'm sorry, your time is up. Thank you very much for listening to my points. Thank you. Are there any questions for Mr. Jaywar? I do not. No. Ms. Wine, would you like an opportunity to file something in response on Gutierrez? No, thank you. As I said, I was generally aware of it. I looked it up. It was a rule 23 order, which has no precedential value, which reminds me of why it wasn't cited in the brief, because the rules indicate that they should not be cited. So I do not. But I do appreciate. Thank you, Justice McDade, for the opportunity. Are there any further questions here for anybody? No, not for me. Okay. And we thank you both for your arguments this afternoon. We will take the matter under advisement, and we'll issue a written decision as quickly as possible.